In re TOYOTA MOTOR CORP. HY-BRID BRAKE MARKETING, SALES, PRACTICES AND PRODUCTS LIA-BILITY LITIGATION.

Case No. SAML 10–02172–CJC(RNBx).

United States District Court,
C.D. California,
Southern Division.

Sept. 12, 2011.

Christopher B. Hayes, David E. Bower, Jamie R. Mogil, Faruqui and Faruqui LLP, Los Angeles, CA, Jeremy Nash, Jill S. Abrams, Karin E. Fisch, Abbey Spanier Rodd and Abrams LLP, Edith M. Kallas, Joe R. Whatley, Jr., Patrick J. Sheehan, Shujah A. Awan, Whatley Drake & Kallas LLC, Alexandra L. Sims, Gina M. Tufaro, Justin B. Shane, Michael A. Schwartz, Paul O. Paradis, Horwitz Horwitz and Paradis Attorneys at Law, Michael A. London, Douglas & London, Carl Lesueur, Tannenbaum Helpern Syracuse and Hirschtritt, Joel A. Klarreich, Tannenbaum Helpern Syracuse and Hirschtritt LLP, New York, NY, Kara M. Wolke, Lionel Zevi Glancy,

Marc L. Godino, Michael M. Goldberg, Orin Kurtz, Glancy Binkow and Goldberg, Benjamin Michael Lopatin, Law Offices of Howard Rubinstein, Los Angeles, CA, Robert J. Stein, III, William Michael Hensley, Alvarado Smith APC, Santa Ana, CA, Jennifer Weber Johnson, Joel M. Fineberg, Gresham PC, R. Dean Gresham, Payne Mitchell Law Group, LLC, Dallas, TX, Charles T. Lester, Jr., Eric C. Deters, Eric C. Deters & Associates PSC, Independence, KY, Brian William Smith, Smith and Vanture LLP, Howard Weil Rubinstein, Law Office of Howard W. Rubinstein, West Palm Beach, FL, Chad E. Stewart, W. Daniel Miles, III, William Elvin Hopkins, Jr., Beasley Allen Crow Methvin Portis & Miles PC, Montgomery, AL, Paul R. Kiesel, Kiesel Boucher Larson LLP, Beverly Hills, CA, Philip B. Zipin, The Zipin Law Firm LLC, Silver Spring, MD, D. Scott Kalish, John R. Climaco, Patrick G. Warner, Climaco Wilcox Peca Tarantino & Garofoli Co. LPA, Cleveland, OH, Frank E. Piscitelli, Jr., Piscitelli Law Firm, Highland Heights, OH, Stephen L. Swann, Law Offices of Stephen L. Swann, Arlington, VA, for Plaintiff.

Cary A. Slobin, Bowman and Brooke LLP, Giovanna C. Tarantino Bingham, Hartline Dacus Barger Dreyer & Kern LLP, Dallas, TX, Darlene M. Cho, Denise A. Smith–Mars, Derek K. Ishikawa, Karen R. Thorland, Michael L. Mallow, Patrick N. Downes, Rachel Aleeza Rappaport, Loeb and Loeb, Los Angeles, CA, Gregory A. Harrison, Dinsmore & Shohl, Cincinnati, OH, Gregory Lee Schuck, Jennifer Hadrick Reid, Huie Fernambucq & Stewart, LLP, Birmingham, AL, Joel Allen Dewey, DLA Piper LLP, Baltimore, MD, Karl Geercken, Alston & Bird LLP, Kristin Ann Meister, Alston & Bird, LLP, New York, NY, Keith Bryan Rose, The Rose Law Firm, Albany, NY, Michael Brian Shortnacy, Loeb & Loeb LLP, Los Ange-

les, CA, Nicholas Thomas Moraites, William Dean Ledoux, Jr., Eckert Seamans Cherin & Mellott LLC, Washington, DC, for Defendant.

## ORDER DENYING DEFENDANTS' MOTION TO DISMISS AND GRANTING IN LIMITED PART MOTION TO STRIKE

CORMAC J. CARNEY, District Judge.

## I. INTRODUCTION

Plaintiffs Michael Scholten, Jessica M. Kramer, Alexsandra Del Real, Lu Li, and Michael Choi (collectively, "Plaintiffs") bring this putative class action against Defendants Toyota Motor Corporation and Toyota Motor Sales U.S.A., Inc. (collectively "Defendants" or "Toyota") on behalf of themselves and others similarly situated who purchased or leased Model Year 2010 Toyota Prius (the "Prius") or Model Year 2010 Lexus HS 250h (the "Lexus") (collectively, the "Class Vehicles") in the United States, which were manufactured between January 2009 and February 2010. Plaintiffs allege that a defect in the anti-lock brake system (the "ABS") of the Class Vehicles caused the ABS to improperly engage when it is not needed, resulting in increased stopping time and distance. Plaintiffs further allege that Toyota had notice of the defect as early as July 2009 but nevertheless failed to disclose the defect on a timely basis, continued to manufacture and sell the Class Vehicles, and advertised the Class Vehicles as safe and reliable. In February 2010, Toyota voluntarily recalled the Class Vehicles and offered to install a software update to remedy the braking defect. Despite the recall, Plaintiffs claim that the braking defect has not been cured, and they have suffered ensuing monetary and property damages. Plaintiffs assert five causes of action against Toyota under California law for (1) violations of the Consumer Legal Reme-

dies Act ("CLRA"), (2) violations of the Unfair Competition Law ("UCL"), (3) violations of the False Advertising Law ("FAL"), (4) breach of Implied Warranty of Merchantability, and (5) common law breach of contract.

Toyota now moves to dismiss Plaintiffs' claims pursuant to the Federal Rule of Civil Procedure 12(b)(6). Specifically, Toyota contends that its voluntary recall of the Class Vehicles renders the claims moot. Toyota further moves to dismiss Plaintiff Kramer's claims in deference to the National Highway Traffic Safety Administration ("NHTSA") under the doctrine of primary jurisdiction. Toyota additionally moves to dismiss Plaintiffs' claims for violation of the CLRA, UCL, and FAL under Federal Rule of Civil Procedure 9(b) for failure to allege these claims with particularity. Toyota also moves to dismiss Plaintiff's class allegations on the ground that Plaintiffs are unable to meet the requirements of Federal Rules of Civil Procedure 23 because Plaintiffs are not typical of the class, individual issues predominate, and the proposed putative class is not ascertainable. Finally, Toyota moves to dismiss Plaintiffs' CLRA class allegations because Plaintiffs are unable to meet the requirements of Section 1781 of the California Civil Code, as Toyota instituted a voluntary recall that effectively bars a CLRA class action. Alternatively, Toyota moves to strike portions of the First Consolidated Amended Class Action Complaint ("Complaint" or "Compl.") under Federal Rule of Civil Procedure 12(f).

For the following reasons, Toyota's motion to dismiss is DENIED, and its Motion to Strike is GRANTED IN LIMITED PART.

## II. FACTUAL ALLEGATIONS

Plaintiffs allege that the Model Year 2010 Prius and Model Year 2010 Lexus HS

250h vehicles all contain the same defect in the anti-lock brake system that creates an unreasonably safety risk to consumers. (Compl. ¶¶ 1, 59–64, 67.) All the Class Vehicles were manufactured between January 2009 and February 2010. (*Id.* ¶ 60.) Specifically, Plaintiffs allege that the Class Vehicles have a braking defect that cause stopping distances to increase relative to driver expectations on rough or slick surfaces. (*Id.* ¶¶ 3, 55.) Some drivers have described the condition as a brief lag in braking capability or a brief surge while braking. (*Id.* ¶ 55.) Plaintiff Scholten experienced braking problems that caused him to crash his Prius soon after he purchased his vehicle in October 2009. (*Id.* ¶ 18.) Mr. Scholten later traded in his vehicle for another 2010 Prius with substantial out of pocket loss. (*Id.*) Plaintiffs Kramer, Li, and Choi purchased their Prius between June 2009 and January 2010 and also experienced braking while driving their Prius. (*Id.* ¶ 19, 21–22.) Moreover, according to the NHTSA data released around July 2010, the NHTSA and Toyota received hundreds of consumer complaints related to the Prius braking system, along with dozens of reports of crashes and injuries. (*Id.* ¶ 53.) Plaintiffs further claim that because of the defect, which has not been cured, the value of their vehicles has decreased below the standard depreciation value. (*Id.* ¶¶ 74–77.)

Plaintiffs allege that Toyota knew about the alleged braking defect and the dangers it posed to both drivers and pedestrians as early as July 2009 through hundreds of consumer complaints filed with Toyota and the NHTSA. (*Id.* ¶¶ 5–6, 10, 52–55.) Despite knowledge of the defect, Plaintiffs claim that Toyota failed to disclose the defect to consumers but instead covertly implemented a software update as a "running production change" in early 2010 to remedy the braking problem by "improving the ABS system's response time, as well as the system's overall sensitivity to tire slippage for all future Prius vehicles." (*Id.* ¶¶ 8, 56–58.) From 2009 to 2010, while Toyota knew about the braking defect in the Class Vehicles, Plaintiffs claim that Toyota nevertheless utilized misleading advertisements that promoted the safety and reliability of the Class Vehicles, via various media sources as well as through the vehicles' warranty and service guides. (*Id.* ¶¶ 1–2, 27–44; Defs.' Req. for Judicial Notice, Exhs. H, I.)[1] The Class Vehicles also included express written warranties which covered repairs and adjustments needed to correct any defects in materials or workmanship of any parts supplied by Toyota. (Compl. ¶¶ 45–51.) Plaintiffs allege that they had seen Toyota advertisements that promoted the safety of the vehicles without any mention of the vehicles' defects; that Plaintiffs relied on this information in purchasing their defective vehicles; and that Plaintiffs would not have purchased the vehicles had they known about the defects. (*Id.* ¶¶ 14, 18–22.)

On February 3, 2010, the NHTSA opened a formal investigation related to braking problems with the Prius vehicles after receiving consumer complaints that they experienced momentary loss of braking during brake applications while traveling over an uneven road surface such as a pothole or bump in the road. (*Id.* ¶ 55; Defs.' Req. for Judicial Notice,

---

1. The Court takes judicial notice of the 2010 Prius and 2010 Lexus HS 250h Warranty and Maintenance Guides, attached as Exhibits H and I, respectively, to Defendants' Request for Judicial Notice, as the Complaint references and quotes from these warranties. (Compl. ¶¶ 47–51.)

Exh. D.) [2] On February 8, 2010, Toyota announced that it would conduct a voluntary recall for the Class Vehicles to update the ABS software in response to consumer complaints. (*Id.* ¶¶ 11, 59–60; Defs.' Req. for Judicial Notice, Exh. K.) [3] Toyota expected to begin the recall by late February 2010 and to complete the recall by late March 2010. (Defs.' Req. for Judicial Notice, Exh. F).[4] Approximately 133,459 Prius and 15,090 Lexus vehicles were recalled. (*Id.* ¶ 60.) Only Prius vehicles produced since May 2009 and all Lexus HS 250h vehicles are subject to the recall. (Defs.' Req. for Judicial Notice, Exh. K.) Owners and lessees of the Class Vehicles were notified that they were entitled to a free software update for their braking system. (*Id.* ¶ 12.) Toyota also announced that it would no longer manufacture or sell the Lexus and other vehicles subject to the defect for which a software update had not yet been developed to remedy the braking problem. (*Id.* ¶ 11.)

On July 12, 2010, in light of Toyota's recall of the Class Vehicles, the NHTSA closed its investigation into consumer complaints regarding braking problems with the Prius vehicles, but stated that it would "continue to monitor the subject vehicles' performance" and would "take further action as future circumstances dictate." (Defs.' Req. for Judicial Notice, Exh. D.) Toyota submitted quarterly reports to the NHTSA regarding the number of braking problem reports in the Class Vehicles and instances of inspection and repairs. (Defs.' Req. for Judicial Notice, Exh. G.) [5]

Despite the recall of Class Vehicles, however, Plaintiffs allege that Toyota has failed to remedy the braking defect, and drivers continue to experience the loss of braking power even after receiving the software update. (Compl. ¶¶ 19, 68–73.) And despite not curing the defects, Plaintiffs allege that Toyota continues to market the Prius and Lexus as safe to drive. (*Id.* ¶ 64.) Based on these events, Plaintiffs assert claims for violations of the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.* (*id.* ¶¶ 87–108); violations of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 (*id.* ¶¶ 109–117); violations of the California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 (*id.* ¶¶ 118–125); breach of Implied Warranty of Merchantability, Cal. Com. Code § 2314 (*id.* ¶¶ 126–132); and common law breach of contract (*id.* ¶¶ 133–136).[6]

2. The Court takes judicial notice of the July 12, 2010 NHTSA's ODI resume closing its investigation into Model Year 2010 Prius braking performance, attached as Exhibit D to Defendants' Request for Judicial Notice, as it is a record from an administrative agency.

3. The Court takes judicial notice of Toyota's February 8, 2011 press release announcing the recall, attached as Exhibit K to Defendants' Request for Judicial Notice, as Plaintiffs reference and quote from the press release. (Compl. ¶¶ 11, 59, 61.)

4. The Court takes judicial notice of the February 9, 2010 letter from the NHTSA to Toyota, attached as Exhibit F to Defendants' Request for Judicial Notice, as a record of an administrative agency.

5. The Court takes judicial notice of Toyota's quarterly reports to the NHTSA, attached as Exhibit G to Defendants' Request for Judicial Notice, as records of an administrative agency.

6. Plaintiffs seek to have California law apply to all class members' claims in this nationwide class action. (Compl. ¶ 15; *see id.* Counts I–V, ¶¶ 87–136.) Plaintiffs are residents of California, Texas, and North Carolina, who purchased their Toyota Prius Class Vehicles in California, Texas, and Maryland, respectively. (*Id.* ¶¶ 18–22.) Neither party briefed the choice-of-law issue in the instant motion, and Toyota does not contest that California law applies to this action. For purposes of this motion, and this motion only, the

## III. ANALYSIS

### A. Legal Standard Under Rule 12(b)(6)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. The issue on a motion to dismiss for failure to state a claim is not whether the claimant will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims asserted. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir.1997). When evaluating a Rule 12(b)(6) motion, the district court must accept all material allegations in the complaint as true and construe them in the light most favorable to the nonmoving party. *Moyo v. Gomez*, 32 F.3d 1382, 1384 (9th Cir.1994). The district court may also consider additional facts in materials of which the district court may take judicial notice, *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir.1994), as well as "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading," *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir.1994), *overruled in part on other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir.2002). Dismissal of a complaint for failure to state a claim is not proper where a plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). In keeping with this liberal pleading standard, the district court should grant the plaintiff leave to amend if the complaint can possibly be cured by additional factual allegations. *Doe v. United States*, 58 F.3d 494, 497 (9th Cir.1995).

### B. CLRA, UCL, FAL Claims (Counts I, II, II) [7]

#### 1. Heightened Pleading Standard Under Rule 9(b)

Where plaintiff alleges fraudulent conduct and relies on that conduct as a basis of a claim, that claim is "grounded in fraud" or "sound[s] in fraud," and is subject to the heightened pleading standard under Federal Rule of Civil Procedure 9(b). *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1122 (9th Cir.2009) (applying Rule 9(b) standard to CLRA and UCL claims); *Vess v. Ciba–Geigy Corp., U.S.A.*, 317 F.3d 1097, 1103–1104 (9th Cir.2003). Plaintiffs allege that Toyota knew about the braking defect in the Class Vehicles but nevertheless advertised that the vehicles were safe. Fraud is thus an essential element of the CLRA, UCL, and FAL claims, and Plaintiff must "state with par-

Court assumes that California law applies to all class members' claims. The Court will resolve the choice-of-law issue on a subsequent motion for class certification or motion for summary judgment.

**7.** As a threshold matter, Defendants do not challenge Plaintiffs' standing to bring a UCL and FAL claim. Standing for these claims requires that Plaintiffs "suffered injury in fact and [have] lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204; *Clayworth v. Pfizer, Inc.*, 49 Cal.4th 758, 788, 111 Cal.Rptr.3d 666, 233 P.3d 1066 (2010). "A person whose property is diminished by a payment of money wrongfully induced is injured in his property." *Id.* (quoting *Chattanooga Foundry & Pipe Works v. Atlanta*, 203 U.S. 390, 396, 27 S.Ct. 65, 51 L.Ed. 241 (1906)). Plaintiffs allege that they relied upon Toyota's misleading marketing materials about the safety of the Class Vehicles, and that had they known about the braking defect they would not have purchased the vehicles. As a result, Plaintiffs allege that their vehicles "have diminished at a greater rate than standard depreciation as a result of the Defect." (Compl. ¶ 74; *id.* ¶¶ 75–76.) These allegations are sufficient to establish standing for Plaintiffs' UCL and FAL claims.

ticularity the circumstances constituting fraud," Fed.R.Civ.P. 9(b); *Kearns,* 567 F.3d at 1127, including the "the time, place and specific content of the false representations as well as the parties to the misrepresentations." *Vess,* 317 F.3d at 1106 (9th Cir.2003) (quoting *Cooper v. Pickett,* 137 F.3d 616, 627 (9th Cir.1997)). Fraud claims must be accompanied by the "who, what, when, and how" of the fraudulent conduct charged. *Vess,* 317 F.3d at 1106 (internal citations and quotes omitted).

### 2. *Plaintiffs' CLRA and UCL Claims Are Not Moot*

■ Defendants contend that Plaintiffs' CLRA and UCL claims for damages is rendered moot by Toyota's recall of the Class Vehicles under Section 1782(b) of the CLRA. (Defs.' Mem. in Supp. Motion to Dismiss, at 7.) [8] The Court disagrees. Section 1782(b) of the CLRA provides that "[e]xcept as provided in subdivision (c), no action for damages may be maintained under Section 1780 if an appropriate correction, repair, replacement, or other remedy is given, or agreed to be given within a reasonable time, to the consumer within 30 days after receipt of the notice." Cal. Civ. Code § 1780(b). Plaintiffs allege that despite the recall of the Class Vehicles in February 2010, the braking defects for Plaintiff Kramer's and the putative class members' vehicles have not been cured.

(Compl. ¶¶ 13, 19, 68–73.) Plaintiff Kramer also alleges that she notified Defendants of her braking problem on two occasions in February 2010 and February 2011, and over thirty days have passed without Defendants taking or agreeing to take appropriate corrective measures. (*Id.* ¶ 103.) The truth of whether the recall cured the defect in the Class Vehicles cannot be determined at the pleading stage.[9] Thus, Toyota's recall does not moot Plaintiffs' CLRA claim, and as Plaintiffs' UCL claim is predicated the CLRA claim, Plaintiffs' UCL claim is also not mooted.

■ Toyota further argues that its voluntary recall bars Plaintiffs' request to certify a CLRA class under Section 1782(c) of the California Civil Code. (Defs.' Mem. in Supp. Motion to Dismiss, at 22–23.) Section 1787(c) prohibits any action for damages in a consumer class action where "[t]he correction, repair, replacement, or other remedy requested by the consumers has been, or, in a reasonable time, shall be, given." Cal. Civ. Code § 1781(c)(3). But, as explained above, Plaintiffs fundamentally contest the issue of whether the recall cured the braking defect. Furthermore, to the extent that Toyota's recall invokes issues of whether the putative class may be certified for a class CLRA claim, the Court reserves the resolution of those issues for a motion for class certification.

---

8. Toyota does not raise the issue of whether the recall moots Plaintiffs' FAL claim.

9. Toyota argues that the proper standard for a remedy under Section 1782 of the California Civil Code is that it only "attempts to comply," (Cal. Civ. Code § 1782(e)), not that it actually cure the defect, and since Toyota has attempted to remedy Plaintiff Kramer's braking defect, Ms. Kramer is precluded from pursuing a CLRA claim. (Defs.' Mem. in Supp. Motion to Dismiss, at 12 n.7; Defs' Reply in Supp. Motion to Dismiss, at 19–20.) The Court disagrees. Section 1782(e) does not set forth a standard for what constitutes

proper "remedy" under the statute; rather it relates to issues of whether "attempts to comply" with the statute is admissible under the Evidence Code. Toyota may introduce attempts to remedy the braking defect of Plaintiff Kramer's vehicle as evidence of its good-faith effort to comply with the statute or as evidence to show compliance under Section 1782. However, the statute does not establish that such attempts equate to compliance. Section 1782(c) thus does not preclude Plaintiff Kramer from pursuing a CLRA claim at the pleading stage.

### 3. *CLRA Claim*

■ The Court finds that Plaintiffs have pleaded sufficient facts for a CLRA claim against Toyota under Rule 9(b). The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices in transactions for the sale or lease of goods to consumers," including making representations that goods have benefits or quantities that they do not have or making representations that goods or services are of a particular, standard quality or grade if they are not. Cal. Civ. Code § 1770(a)(5), (7). Plaintiffs allege that Toyota engaged in deceptive business practices by failing to disclose and actively concealing the ABS braking defect that contradicted statements in Toyota's marketing materials regarding the safety and functionality of the brake system. (Compl. ¶¶ 93–96, 99.) To state a claim under the CLRA based on fraudulent omissions, Plaintiffs must allege that the omitted information is contrary to a representation actually made by Toyota or that Toyota had an obligation to disclose the omitted fact. *Daugherty v. Am. Honda Motor Co.,* 144 Cal.App.4th 824, 835, 51 Cal.Rptr.3d 118 (2006). Plaintiffs must also plead reliance on the representations or omissions and damages. *Buckland v. Threshold Enterprises, Ltd.,* 155 Cal.App.4th 798, 810, 66 Cal.Rptr.3d 543 (2007), *overruled in part on other grounds by Kwikset Corp. v. Superior Court,* 51 Cal.4th 310, 335–36, 120 Cal.Rptr.3d 741, 246 P.3d 877 (2011).

Plaintiffs have alleged sufficient facts to state a CLRA claim based on fraudulent omissions. First, Plaintiffs have alleged sufficient facts to establish that Toyota's omission was contrary to representations made by Toyota. Plaintiffs have alleged that there is a defect in the braking system of the Toyota Hybrid Class Vehicles that Plaintiffs all experienced. (Compl. ¶¶ 3, 55, 18–22.) Plaintiff further alleged the times and circumstances in which Toyota knew about the braking defect but nevertheless promoted the Class Vehicles as safe and reliable in their marketing materials and advertisements. (*Id.* ¶¶ 1–2, 5–6, 10, 27–44, 52–55.)

■ Second, Plaintiffs have alleged sufficient facts to establish that Toyota had a duty to disclose the ABS defect. To allege a duty to disclose, a plaintiff must show one of the following factors: that defendant (1) is in a fiduciary relationship with the plaintiff; (2) had exclusive knowledge of the material facts not known to the plaintiff, (3) actively conceals a material fact from the plaintiff, or (4) makes partial representations but also suppresses some fact. *LiMandri v. Judkins,* 52 Cal. App.4th 326, 337, 60 Cal.Rptr.2d 539 (1997). Plaintiffs have alleged a duty to disclose under the *LiMandri* factors 2 and 3. Plaintiffs allege Toyota had exclusive knowledge of the defect as early as July 2009 based on consumer complaints, (Compl. ¶¶ 5–6, 10, 52–55, 96–97), and that the defect was not known to any of the Plaintiffs, (*id.* ¶¶ 18–22). Plaintiffs have also alleged that despite knowledge of the defect, Toyota actively concealed the defect and covertly implemented a software update in early 2010. (*Id.* ¶¶ 8, 56–58, 94.) Plaintiffs' allegations also establish that the omission was material to an ordinary consumer deciding to purchase a car since the undisclosed defect posed and poses a safety risk by loss of braking power. (*Id.* ¶¶ 67, 99.) *See contra Smith v. Ford Motor Co.,* 749 F.Supp.2d 980, 987 (N.D.Cal. 2010) (finding that defendant was entitled to summary judgment on the plaintiff's CLRA claim because plaintiffs had failed to provide evidence that latent ignition defects posed a risk to safety). In addition to Plaintiffs' claims that each of them experienced braking problems from the ABS defect, (Compl. ¶¶ 18–22), Plaintiffs also

alleged numerous complaints from other consumers who claim that the alleged brake defect caused them to get into accidents and incur injuries. (*Id.* ¶¶ 53, 55).

Third, Plaintiffs have sufficiently alleged reliance on particular misrepresentations regarding the ABS in the Class Vehicles. Plaintiffs here have identified specific statements in the brochures, marketing materials, and advertisements for each of their and the putative class members' vehicles regarding the safety and functionality of the brake system and the ABS, (*id.* ¶¶ 35–43, 45–50), and allege that they read and relied on those statements in connection with purchasing their vehicles, (*id.* ¶¶ 18–22). *Contra Kearns,* 567 F.3d at 1126 ("Kearns fails to allege in any of his complaints the particular circumstances surrounding such representations. Nowhere in the TAC does Kearns specify what the television advertisements or other sales material specifically stated. Nor did Kearns specify when he was exposed to them or which ones he found material . . . . [or] which sales material he relied upon in making his decision. . . ."). Plaintiffs allege that had they known of the braking defect, they would not have purchased their vehicles. (Compl. ¶¶ 14, 18–22.) Finally, Plaintiffs have sufficiently alleged that they suffered economic injury as a result of the alleged fraudulent omissions because each Plaintiff has alleged that he or she has experienced the braking defect and that had they known of the braking defect, they would not have purchased the vehicles. (*Id.* ¶¶ 14, 18–22.)

#### 4. *UCL Claim*

 Plaintiffs have similarly alleged sufficient facts to state a claim under the UCL under Rule 9(b). The UCL prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. The UCL provides a separate theory of liability under the "unlaw-ful," "unfair," or "fraudulent" prong. *Lozano v. AT & T Wireless Services, Inc.,* 504 F.3d 718, 731 (9th Cir.2007). Plaintiffs' allegations pass muster under all three prongs. First, Plaintiffs have pleaded sufficient facts for a UCL claim under the "unlawful" prong. The unlawful prong borrows violations of other laws and treats them as independently actionable under the UCL. *Farmers Ins. Exchange v. Superior Court,* 2 Cal.4th 377, 383, 6 Cal. Rptr.2d 487, 826 P.2d 730 (1992). Plaintiffs allege that Toyota committed "unlawful" business acts by violating the CLRA. (Compl. ¶ 111.) Because Plaintiffs have adequately pleaded a CLRA claim, Plaintiffs have also stated sufficient facts for a UCL claim.

Second, Plaintiffs have pleaded sufficient facts under the "unfair" prong. (Compl. ¶ 113.) The "unfair" prong provides an intentionally broad independent basis for relief. *Motors, Inc. v. Times Mirror Co.,* 102 Cal.App.3d 735, 740, 162 Cal.Rptr. 543 (1980). Where, as here, Plaintiffs are consumers, California courts have applied three different standards to determine whether a business act or practice is "unfair": (1) the "unfair" conduct must be "tethered to specific constitutional, statutory or regulatory provisions," (2) unfair conduct requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim to find that the defendant's conduct is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, and (3) unfair conduct requires that the consumer injury must be substantial, the injury must not be outweighed by any countervailing benefits to consumers or competition, and it must be an injury that consumers themselves could not reasonably have avoided. *Drum v. San Fernando Valley Bar Ass'n,* 182 Cal.App.4th 247, 257, 106 Cal.Rptr.3d 46 (2010). Plain-

tiffs allege that Toyota engaged in "unfair" business practices by manufacturing, selling, or leasing the Class Vehicles that Toyota knew were defective but did not adequately investigate or disclose. (Compl. ¶ 113.) Plaintiffs also allege that Toyota actively concealed the existence of the defect. (*Id.* ¶¶ 8, 56–58.) For the same reasons discussed with respect to Plaintiffs' CLRA claim, Plaintiffs have sufficiently alleged actionable omissions of material fact that Toyota had a duty to disclose, namely the alleged ABS defect that posed a safety risk to consumers, that they relied on those omissions, and that they suffered economic injury as a result. Plaintiffs' allegations regarding the safety risk posed by the alleged ABS defect, the number of complaints filed nationwide with the NHTSA related to the defect, and allegations that Toyota's recall did not cure the braking defect are sufficient to state a claim for "unfair" business practices under any of the three standards applied by California courts. *See Drum,* 182 Cal.App.4th at 257, 106 Cal.Rptr.3d 46.

Third, Plaintiffs have further alleged sufficient facts to state a UCL under the "fraudulent" prong. (Compl. ¶ 112). Plaintiffs have pleaded specific facts surrounding the circumstances in which Defendants knew about but failed to disclose the braking defect, (*id.* ¶¶ 5–6, 8, 10, 52–58); made false representations regarding the safety of the Class Vehicles, (*id.* ¶¶ 1–2, 28–44); that this information was material and relied upon by Plaintiffs in their decision to purchase their vehicles, (*id.* ¶¶ 14, 18–22); and that they suffered loss of money and property as a result, (*id.* ¶¶ 74–76).

#### 5. *FAL Claim*

 Plaintiffs have alleged sufficient facts for a FAL claim under Rule 9(b). (Compl. ¶¶ 118–125.) Section 17500 prohibits "any statement" that is "untrue or misleading" and made "with the intent directly or indirectly to dispose of" property or services. Cal. Bus. & Prof. Code § 17500. To state a claim for a FAL violation based on false advertising or promotional practices, Plaintiffs need only show that "members of the public are likely to be deceived." *In re Tobacco II Cases,* 46 Cal.4th 298, 312, 93 Cal.Rptr.3d 559, 207 P.3d 20 (2009) (internal citation and quotes omitted). Advertisements that make representations about safety are actionable. *See, e.g., Continental Airlines, Inc. v. McDonnell Douglas Corp.,* 216 Cal. App.3d 388, 424, 264 Cal.Rptr. 779 (1989) (representations in brochures "were not statements of 'opinion' or mere 'puffing' "). As discussed above, Plaintiffs have alleged specific facts regarding the Defendants' knowledge of the defect, (Compl. ¶¶ 5–6, 8, 10, 52–58); Defendants' dissemination of misleading marketing materials and advertisements promoting the Class Vehicles' safety that would likely deceive a reasonable consumer, (*id.* ¶¶ 1–2, 28–44, 121); that Plaintiffs materially relied on these advertisements, (14, 18–22); and that Plaintiffs suffered money and property as a result (*id.* ¶¶ 74–76).

### C. Implied Warranty of Merchantability Claim, Count IV

 Plaintiffs have pleaded sufficient facts for a breach of Implied Warranty of Merchantability claim under Section 2314 of the California Commercial Code. Section 2314 states in relevant part that "a warranty that the goods shall be merchantable is implied in a contract and for their sale if the seller is a merchant with respect to good of that kind. . . . Goods to be merchantable must be . . . fit for the ordinary purposes for which such goods are used." Cal. Com. Code § 2314(2)(c). As a general rule, plaintiff must stand in

"vertical privity"[10] to bring an implied warranty of merchantability claim. *See Anunziato v. eMachines, Inc.,* 402 F.Supp.2d 1133, 1141 (C.D.Cal.2005). Under the Commercial Code, however, California has recognized an exception to the vertical privity requirement where the plaintiff consumer is an intended third-party beneficiary of the contract for sale of a good between a manufacturer and a dealer. *See Gilbert Fin. Corp. v. Steelform Contracting Co.,* 82 Cal.App.3d 65, 69–70, 145 Cal.Rptr. 448 (1978) (finding that consumer could sue subcontractor for breach of implied warranty as a third-party beneficiary of subcontractor's implied warranty to general contractor). Here, Plaintiffs are arguably the intended beneficiaries of any implied warranty of merchantability between Toyota and its auto dealers because Toyota intends for the dealers to sell its cars to consumers. Plaintiffs allege that they purchased their Toyota Hybrid Class Vehicles from authorized Toyota dealers. (Compl. ¶¶ 18–22, 131.) The representations that Plaintiffs allege were misleading were found in marketing materials and brochures for each of the Toyota Hybrid Class Vehicles, (*id.* ¶¶ 28, 41, 43), which were presumably intended for car purchasers, rather than the auto dealers themselves.

Nonetheless, Toyota argues because the recall remedied the braking defect, Plaintiffs have failed to state a claim for breach of implied warranty of merchantability, as their vehicles do not "manifest a defect that is so basic it renders the vehicle unfit for its ordinary purpose of providing transportation." (Defs.' Mem. in Supp. Motion to Dismiss, at 11, citing *Am. Suzuki Motor Corp. v. Superior Court,* 37 Cal.App.4th 1291, 1296, 44 Cal.Rptr.2d 526 (1995) (find-

ing that a vehicle breaches the implied warranty of merchantability only if the vehicle is unfit for its ordinary purpose of providing transportation and denying a motion for class certification on the ground that only a few of the plaintiffs had alleged that the automobile had actually failed).

Defendants also argue that the California Commercial Code Section 2719(1)(a) and Toyota's New Vehicle Limited Warranty limit the buyer's remedy to repairs and adjustments needed to correct defects in materials or workmanship of any part supplied by Toyota. (Defs.' Mem. in Supp. Motion to Dismiss, at 11.) Thus, Toyota argues that a repair is precisely what Plaintiffs received. (*Id.*) But Plaintiffs have alleged that the Class Vehicles are inherently defective because of the ABS defect, which delays braking and dangerously increases stopping distance. (Compl. ¶¶ 3, 55, 129.) And while the written warranties may limit the buyer's remedy to repairs and adjustments, Plaintiffs allege that the recall did not cure the defect in the vehicles of Plaintiff Kramer and other similarly-situated class members. (*Id.* ¶¶ 13, 19, 68–73.) These allegations, taken as true, tend to support a finding that the defective Class Vehicles are unsafe and thus are not fit for their ordinary purpose. *See Isip v. Mercedes–Benz USA, LLC,* 155 Cal.App.4th 19, 27, 65 Cal.Rptr.3d 695 (2007) (finding that a vehicle that "smells, lurches, clanks, and emits smoke over an extended period of time is not fit for its intended purpose").

## D. Breach of Contract Claim, Count V

Plaintiffs plead common law warranty and breach of contract in the alternative to their statutory warranty claim. (Compl.

---

**10.** The term "vertical privity" "refers to the links in the chain of distribution of goods." *Anunziato,* 402 F.Supp.2d at 1141. Vertical privity exists "[i]f the buyer and seller occupy adjoining links in the chain." *Id.*

¶¶ 133–136.) Claims pled in the alternative are permitted under Federal Rule of Civil Procedure 8(d)(2) and 8(a)(3). Dismissal of common law alternatives at the pleading stage is unwarranted.

### E. Plaintiff Kramer's Claims

Toyota argues that Plaintiffs Kramer's claims should be dismissed or deferred to the NHTSA because (1) Plaintiff Kramer has not afforded Toyota reasonable opportunity to remedy the braking defect and (2) NHTSA has proper jurisdiction over the efficacy of the recall. The Court finds neither argument persuasive.

 First, Toyota argues that Plaintiff Kramer cannot pursue her claims against Toyota until she presents her vehicle at least a second time, and Toyota is unable to cure the braking defect. (Defs.' Mem. in Supp. Motion to Dismiss, at 12.) Relying on *Robertson v. Fleetwood Travel Trailers of California, Inc.*, 144 Cal. App.4th 785, 799, 50 Cal.Rptr.3d 731 (2006), Toyota contends that, at a minimum, it must have more than one opportunity to fix the braking defect to constitute "reasonable opportunity" to cure the defect. (*Id.*) Toyota further argues that Plaintiff Kramer only alleged that she participated in the recall but that she did not present her vehicle to Toyota once she realized that the braking problem was not fixed. (*Id.*) But Plaintiff Kramer alleged that she notified Defendants of her braking problem on two occasions on February 11, 2010 and February 25, 2011, and over thirty days have passed without Defendants taking or agreeing to take appropriate corrective measures. (Compl. ¶ 103.) Whether this constitutes "reasonable opportunity" is a factual issue that cannot be decided on a motion to dismiss.

 Second, the primary jurisdiction doctrine does not require the Court to defer Plaintiffs Kramer's claims to the NHTSA at this stage. The primary jurisdiction doctrine requires the court to stay proceedings involving claims that are otherwise cognizable in court but require the court to enable a "referral"—that is, "some issue within the special competence of an administrative agency"—to allow the parties a reasonable opportunity to seek an administrative ruling. *Reiter v. Cooper*, 507 U.S. 258, 268, 269 n. 3, 113 S.Ct. 1213, 122 L.Ed.2d 604 (1993). Where there is such a referral to an administrative agency, the court has discretion to either retain jurisdiction or, if the parties would not be unfairly disadvantaged, to dismiss the case without prejudice. *Id.* at 268–69, 113 S.Ct. 1213. Factors courts will consider in deciding whether to apply the primary jurisdiction doctrine are (1) the need to preserve uniformity and consistency in the regulation of a particular industry and (2) whether the issue is complex or is an issue of first impression such that it requires the agency's special technical expertise. *See Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 303–304, 96 S.Ct. 1978, 48 L.Ed.2d 643 (1976); *Brown v. MCI WorldCom Network Servs.*, 277 F.3d 1166, 1172 (9th Cir.2002). But the doctrine of primary jurisdiction does not require that plaintiff exhaust administrative remedies before proceeding to the district court for relief. *Brown*, 277 F.3d at 1173.

Relying on *Bussian v. DaimlerChrysler Corp.*, 411 F.Supp.2d 614 (M.D.N.C.2006), Toyota contends that the Court should defer to the NHTSA's congressionally-mandated authority over recalls when a recall is already underway and it addresses the concerns by Plaintiffs. (Defs.' Mem. in Supp. Motion to Dismiss, at 13–16.) But *Bussian* neither compels nor persuades the Court to defer Plaintiff Kramer's or the other Plaintiffs' claims to the NHTSA because of Toyota's voluntary recall. In *Bussian*, the district court deferred plain-

tiff's claims, including warranty claims, arising from a defective ball joint in certain four-wheel drive Dodge Durangos. 411 F.Supp.2d at 628. The district court in that case applied the doctrine of primary jurisdiction in light of the NHTSA's investigation confirming the defect and the car manufacturer's ongoing voluntary recall of the defective vehicles that afforded owners and lessees a replacement of ball joints and reimbursement of repairs already made. *Id.* But here, in contrast to *Bussian,* there has been no finding of the efficacy of the software update for the Class Vehicles, and Plaintiffs take fundamental issue with whether the software update remedied the braking defect.

Toyota nevertheless contends that the NHTSA provides an adequate forum in which Plaintiff Kramer can lodge a complaint regarding whether the recall has cured the defect under the administrative scheme of the Motor Vehicle Safety Act. But Plaintiffs' claims are based on California consumer protection statutes and common-law breach of contract, not the Motor Vehicle Safety Act, and do not require resolving questions of compliance with NHTSA regulations. *Cf. Clark v. Time Warner Cable,* 523 F.3d 1110, 1114–15 (9th Cir.2008). Moreover, the investigation by the NHTSA is now closed, while a year and a half has passed since the recall was implemented in February 2010. (Defs.' Req. for Judicial Notice, Exh. K.) There is no evidence that litigation of Plaintiffs' claims will conflict with the NHTSA's supervision of the recall. Nor is it evident from the face of Toyota's quarterly reports to the NHTSA that it has inquired into the effectiveness of its software update. (*Id.,*

Exh. G.) Plaintiff Kramer has also not lodged a complaint with the NHTSA that requires a stay of her court proceeding, and she need not exhaust administrative proceedings before pursuing relief for her claims in court. Here, the circumstances do not persuade the Court to defer to the NHTSA at the pleading stage.

### F. Class Certification

Toyota moves to dismiss on the basis that Plaintiffs cannot meet the class certification requirements under Federal Rule of Civil Procedure 23.[11] Toyota has not shown that Plaintiffs' class allegations clearly cannot satisfy the requirements for class certification under Federal Rule of Civil Procedure 23. Rather, Toyota raises factual issues that will require the Court to consider additional evidence beyond the First Consolidated Amended Class Action Complaint. Specifically, Toyota argues that Plaintiffs cannot meet the typicality requirements because there is a conflict as to whether the recall remedied the braking defect, and that the defect is an inherently subjective issue, as it is tied to Plaintiffs' allegation that the defect "causes stopping distances to increase relative to drive expectations during applications of the brakes on rough or slick road surfaces," (Compl. ¶ 3). (Defs.' Mem. in Supp. Motion to Dismiss, at 20–22) These factual questions are more properly resolved on a motion for class certification pursuant to Federal Rule of Civil Procedure 23, rather than on a motion to dismiss.

### G. Toyota's Motion to Strike

■■■ Defendants' Motion to Strike Portions of the First Consolidated Amend-

---

11. Rule 23 contains four requirements applicable to all proposed classes: (1) the class is so numerous that joinder of all members is impracticable (numerosity); (2) there are questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative party are typical of the claims or defenses of the class (typicality); and (4) the representative party will fairly and adequately protect the interests of the absent class members (adequacy). Fed.R.Civ.P. 23(a).

ed Class Action Complaint is GRANTED IN LIMITED PART. Pursuant to Federal Rule of Civil Procedure 12(f), the court may strike "any redundant, immaterial, impertinent, or scandalous matter." Fed. R.Civ.P. 12(f). The essential function of a Rule 12(f) motion is to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir.1993). However, motions to strike are typically viewed with disfavor because they are often used for purposes of delay, and because of the strong judicial policy favoring resolution on the merits. *RDF Media Ltd. v. Fox Broadcasting Co.*, 372 F.Supp.2d 556, 566 (C.D.Cal.2005). In reviewing a motion to strike, the court must view the pleadings under attack in the light most favorable to the pleader. *Lazar v. Trans Union LLC*, 195 F.R.D. 665, 669 (C.D.Cal.2000). "If there is any doubt whether the portion to be stricken might bear on an issue in the litigation, the court should deny the motion." *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F.Supp.2d 1048, 1057 (N.D.Cal.2004).

The Court hereby strikes the following from the Complaint:

Paragraph 4 in its entirety;

Paragraph 11, lines 2–4: "as well as the Model Year 2010 Toyota Sai and Model Year 2010 Toyota Prius Plug-in Hybrid, hybrid vehicles marketed and sold primarily in Japan"; and

Phrase "or entities" in paragraph 7, line 20, from Plaintiffs' putative class for their class CLRA claim.

Paragraph 4 and Paragraph 11, lines 2–4, are immaterial and impertinent because the Model Year 2010 Toyota Sai and Model Year 2010 Toyota Prius Plug-in Hybrid were sold or leased in Japan and, as Plaintiffs allege in Paragraph 4, are not part of the Class Vehicles at issue in this action.

The Court also strikes the phrase "or entities" from Plaintiffs' putative class for their class CRLA claim only. The parties agree that the phrase "or entities" does not apply to Plaintiffs' putative class for a CLRA claim because a CLRA claim may only be brought by a "consumer," which is defined as an individual under California Civil Code Section 1761(d). (Defs.' Mem. in Supp. Motion to Strike, at 8–9; Plts.' Opp. to Motion to Strike, at 12 n.6.)

Defendants' Motion to Strike is otherwise DENIED. Toyota requests that the court strike paragraphs 27, 32, and 34 of the Complaint because these allegations relate to advertisements and press releases concerning the safety of Toyota vehicles after Plaintiffs purchased their vehicles and therefore are impertinent and prejudicial. (Defs.' Mem. in Supp. Motion to Strike, at 3–4; Defs.' Reply in Supp. Motion to Strike, at 2–3.) The Court disagrees. Although these materials were issued after Plaintiffs purchased their vehicles, they relate to Plaintiffs' allegations of Toyota's general marketing strategy and pattern of promoting their vehicles as safe and reliable, which provide pertinent background information for Plaintiffs' CLRA, UCL, and FAL claims. Toyota's marketing materials and press coverage about the safety of Toyota's vehicles also do not rise to scandalous or unduly prejudicial matters. Toyota further requests that portions of the Complaint (Compl. ¶¶ 41–43, 48, 50, 78 (lines 21–22)) relating to the Lexus Class vehicles should be struck because none of the Plaintiffs purchased a Lexus vehicle. But it is not clear from the Complaint that allegations related to Lexus Class Vehicles are outside the putative class. This issue, along with the issue of whether the putative class includes "or entities" for Plaintiffs' non-CLRA claims (Compl. ¶ 78), are more properly

decided on a motion for class certification.[12]

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is DENIED. Defendants' motion to strike portions of the First Consolidated Amended Class Action Complaint is GRANTED IN LIMITED PART.

---

12. Toyota requests that Plaintiffs' class allegations related to the 2010 Prius and 2010 Lexus HS 250h vehicles purchased or leased after February 8, 2010 be struck from the Complaint. (Defs.' Notice of Motion to Strike ¶ 12; Defs.' Mem. in Supp. of Motion to Strike, at 9–10.) Plaintiffs state that "it is not Plaintiffs' intention to include persons in the Class who purchased their vehicles after the Recall." (Plts.' Opp. to Motion to Strike, at 12.) Although the parties essentially agree that the putative class should not include those who purchased the Class Vehicles after the recall, the Court finds it unnecessary to strike any allegations in the Complaint (and Defendants cite no portions of the Complaint to strike), as the putative class may be more properly decided on a motion for class certification.